# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

**RONALD MELLINGER,**

    **Plaintiff,**

**vs.**                                                **Civil Action No. _____**
                                                    **JURY DEMANDED**

**ROCK RIDGE INSURANCE COMPANY,**

    **Defendant.**

## COMPLAINT

COMES NOW the Plaintiff, Ronald Mellinger, by and through counsel, and submits the following for his Complaint against Rock Ridge Insurance Company:

## PARTIES

1. The Plaintiff, Ronald Mellinger ("Plaintiff"), is a resident of California. At all times relevant hereto, Plaintiff owned and had an insurable interest in the dwelling located at 2602 Hatcher Mountain Road, Pigeon Forge, Sevier County TN 37862 ("Insured Premises").

2. Defendant Rock Ridge Insurance Company ("Defendant") is organized and domiciled in the State of Indiana, maintains its principal place of business in Guaynabo, Puerto Rico, and is engaged in the insurance business in the State of Tennessee, including Sevier County.

3. This Complaint originates as the result of the March 30, 2022 wildfire that struck the Insured Premises and the surrounding Sevierville area, resulting in a total loss to the dwelling and other property at the Insured Premises, and the Defendant's failure and refusal to promptly and fully pay Plaintiff's insurance claim pursuant to Tennessee law and to otherwise honor the subject insurance policy.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum of $75,000.00, exclusive of costs, and is between citizens of different States.

5. Personal jurisdiction over Defendant is proper pursuant to Tenn. Code Ann. § 20-2-223. Upon information and belief, Defendant has regularly solicited business in the State of Tennessee and in this District and has done business in the State of Tennessee and in this District. In particular, without limitation, and upon information and belief, at all times hereinafter mentioned, Defendant was authorized by the Tennessee Department of Commerce and Insurance to issue policies of insurance within the State of Tennessee, including a policy of insurance to the above-named Plaintiff.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District and because Defendant is subject to personal jurisdiction in this District. In particular, upon information and belief, Defendant has solicited business in this District and has issued policies of insurance within this District, including the policy of insurance to the above-named Plaintiff.

## FACTS

### The Policy

7. At all times relevant hereto, Plaintiff was the named insured pursuant to an insurance contract whereby Defendant agreed to insure the dwelling, other structures, and personal property located at the Insured Premises against property damage, bearing Policy BQ01-AOAYQO (the "Policy"). As relevant hereto, the Policy's term was December 18, 2021 to December 18, 2022.

8. A copy of the Policy is attached hereto as ***Exhibit 1***.

9. At all times relevant hereto, the Insured Premises consisted of a residential dwelling and surrounding area.

10. The Policy provided insurance coverage for all risks of direct physical loss to the dwelling, other structures, and personal property located at the Insured Premises, except as otherwise expressly limited or excluded by the Policy.

11. The Declarations page of the Policy reveals that coverage was provided in the following amounts:

    a. Cov A (Dwelling): Guaranteed replacement up to $5 million

    b. Cov B (Other Structures): $25,443

    c. Cov C (Personal Property): $40,708

    d. Cov D (Loss of Use): $50,885

12. The Policy contains an endorsement titled "Openly General Program Endorsement – Tennessee," which provides, in relevant part, as follows:

> **X. SECTION I – CONDITIONS**, paragraph **D. Loss Settlement** is replaced by the following:
>
> **2**. Covered property losses are settled as follows:
>    a. Buildings covered under Coverage A or B at replacement cost at time of loss without deduction for depreciation. In case of a total loss, we will pay this amount whether or not you choose to rebuild. However, settlement is subject to the following conditions:
>    (1) The most we will pay is:
>      (a) For Structures covered under Coverage A: $5 million.
>      (b) For Structures covered under Coverage B: The limit of liability that applies to Coverage B and is shown in the Declarations.

13. Plaintiff paid an annual premium to Defendant in exchange for insurance coverage. Plaintiff paid the required premiums at all times relevant to this Complaint.

## The Loss

14. On or about March 30, 2022, a wildfire destroyed the dwelling and personal property at the Insured Premises, resulting in a total loss (the "Loss").

15. A post-Loss photograph of the destroyed dwelling is below:



16. The Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

17. Plaintiff promptly reported the Loss to Defendant, and the Defendant acknowledged receipt of the claim shortly thereafter.

18. Plaintiff fulfilled all of the duties after the Loss that were imposed upon him by the Policy.

## Tennessee's Valued Policy Law

19. In Tennessee, valued insurance policies covering structures must be paid at the full value listed on the policy if the loss is total in nature. *See*, *e.g.*, *Price v. Allstate Ins. Co.*, 614 S.W.2d 377, 379 (Tenn. Ct. App. 1981) (citing *Third Nat. Bank v. Am. Eq. Ins. Co. of N.Y.*, 178 S.W.2d 915 (Tenn. Ct. App. 1943); *Couch on Insurance 2d*, Anderson, § 54:104, *Valued Policies or Statutes*, at 381) ("If the policy is a valued policy, the valuation fixed in the policy is conclusive since the claim is for a total loss."). Tennessee courts have held the valued policy statutes are to be read into every fire insurance policy in force in this state. *Commercial Union Ins. Co. v. Sneed*, 541 S.W.2d 943, 945 (Tenn. 1976).

20. The valued policy statutes in Tennessee are codified at Tenn. Code Ann. §§ 56-7-801, 803 and provide as follows:

> 56-7-801. Inspection of property insured against fire - No insurance exceeding fair value of property.
> Every agent, within ninety (90) days after making or writing any contract of fire insurance on any building or structure in this state, shall cause the building or structure to be personally inspected; and no company, and no officer or agent thereof, and no insurance broker, shall knowingly issue, negotiate, continue or renew or cause to permit to be issued, negotiated, continued or renewed any fire insurance policy upon property or interests therein within the state of an amount which, with any existing insurance thereon, exceeds the fair value of the property.
>
> 56-7-803. Measure of damage in case of agent's failure to inspect property.
> If the agent fails to place a reasonable value on any such insured property within the ninety (90) days, as provided in § 56-7-801, and which is agreed to by the insured, and a loss occurs, in that event the value as shown by the policy or application shall be conclusively presumed to be reasonable, and settlement shall be made on that basis.

Tenn. Code Ann. §§ 56-7-801, 803.

21. Tennessee courts have held that "the valued policy statute was enacted primarily to protect the insureds from being subjected to the insurer's argument that the building had been over insured and gives the insurer an incentive to inspect risks and assist insureds in establishing proper

5

Case 3:23-cv-00087-CLC-DCP   Document 1   Filed 03/09/23   Page 5 of 13   PageID #: 5

insurance evaluations." *Price v. Allstate Ins. Co.*, 614 S.W.2d 377, 381 (Tenn. Ct. App. 1981). The Tennessee Supreme Court has held:

> The Legislature has said to fire insurance companies, in effect, you shall not insure property beyond its fair value; and, if you do this, you shall not be liable beyond that fair value. But, if you ignore this law, then you stand liable for the amount of insurance that you did issue; and you cannot be allowed to escape liability for such amount on the ground that you defied the law and overinsured the property.

*Riddick v. Yorkshire Ins. Co.*, 52 S.W.2d 166, 169 (Tenn. 1932). The valued policy statutes are considered "remedial statutes," and they should be "liberally construed in furtherance of their purpose." *Id.*

### Application of the Valued Policy Law to the Loss

22. At the time of the Loss in March 30, 2022, the Policy had been in place for more than ninety (90) days, having been in full force and effect since December 18, 2021.

23. Upon information and belief, Defendant did not inspect the Insured Premises within ninety (90) days of issuing the Policy to Plaintiff.

24. At the time of the Loss on March 30, 2022, Defendant had not changed, altered, modified or amended the dwelling limit of the Policy, as originally issued.

25. As a result of the wildfire, the dwelling located on the Insured Premises was a total loss.

26. The value placed on the dwelling by Defendant was "$5 Million." *See*, *supra*, ¶ 11.

27. Under these facts, the Tennessee Supreme Court has mandated that an insurer "cannot be allowed to escape liability for such amount on the ground that [it] defied the law and overinsured the property." Thus, the $5,000,000.00 policy limits on the dwelling are immediately due and owing.

**Plaintiff's Presentation of Claim and Defendant's Response**

28. Subsequent to the March 30, 2022 fire loss and pursuant to the terms of the Policy, the Plaintiff submitted an insurance claim to the Defendant seeking to be indemnified for the full amount of his covered damages.

29. On or about April 2, 2022, Plaintiff's representative submitted a Sworn Statement in Proof of Loss ("proof of loss") to Defendant, demanding payment of $5,430,333.05 as a result of the Loss. A copy of the proof of loss submission provided to Defendant is attached as ***Exhibit 2***.

30. As part of his claim, Plaintiff requested that Defendant issue payment of the dwelling's $5,000,000.00 policy limit.

31. On or about May 5, 2022, Defendant sent a letter to Plaintiff stating that it had issued the following payments under the Policy: Dwelling - $426,697.18; Other Structures - $3,469.24; Personal Property - $40,708; Loss of Rents - $50,885; and Tree Loss - $50,000, for a total payment of $571,759.42. A copy of Defendant's May 5, 2022 letter is attached as ***Exhibit 3***.

32. Also, on or about May 5, 2022, Defendant sent a letter to Plaintiff which rejected the claim presented in Plaintiff's proof of loss and stated "It is [Defendant's] position that the Policy is not a 'valued policy'… and is not subject to the provision of T.C.A. § 56-7-803." A copy of Defendant's second letter dated May 5, 2022 is attached as ***Exhibit 4***.

33. Plaintiff disagreed with Defendant's payment calculations as to the amount owed for the total loss of the dwelling and insisted that the dwelling's limit of $5,000,000.00 is owed pursuant to the Policy and Tennessee law as a result of the total loss of the dwelling.

34. In breach of the Policy and in violation of Tennessee law, the payment made by

7

Defendant for the total loss of the dwelling was insufficient to indemnify Plaintiff for his loss. The Policy provided for stated limits of $5,000,000.00 for the dwelling that was due and owing as a result of the total loss to the dwelling located on the Insured Premises. Defendant's refusal to pay Plaintiff the amounts owed to him for the Loss is without justification.

35. Defendant's refusal to pay the money and benefits due and owing Plaintiff under the Policy caused the Plaintiff to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which he is entitled.

## CAUSES OF ACTION

### Count I - Breach of Contract

36. The allegations contained in the paragraphs above are incorporated herein by reference as if set forth verbatim.

37. The Policy issued by the Defendant was a binding contract and is supported by valid consideration.

38. Defendant is in total, material breach of the Policy, and the Defendant is liable to Plaintiff under the Policy for the total loss sustained to the dwelling located on the Insured Premises. Specifically, Defendant breached its contract with Plaintiff by its failure and refusal to fully and promptly pay the full $5,000,000.00 policy limits owed to Plaintiff, as required by the terms of the Policy and Tennessee law. Alternatively, and irrespective of the application of Tennessee's valued policy law, Defendant breached its contract with Plaintiff by its refusal and failure to properly estimate and pay for the damage sustained to the dwelling located on the Insured Premises.

39. As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy, plus consequential damages.

40. Defendant is liable to Plaintiff for his losses.

41. Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See*, *e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiff's claim for insurance proceeds; (3) unjustly refused and/or failed to fully pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to treat Plaintiff's interests with equal regard to its own; (5) promised prompt action and claim-handling but then failed to provide proper payment; (6) failed and refused to pay Plaintiff's full, valid claim; (7) unnecessarily delayed payment of Plaintiff's insured losses; (8) intentionally lowered its payment commitments to the Plaintiff after he disputed the amounts owed as a result of the Loss; (9) ignored and refused to respond to multiple communications from Plaintiff's representatives; (10) underpaid Plaintiff for his insured losses; (11) misrepresented Tennessee law, even in the face of multiple communications from Plaintiff explaining Defendant's obligations under the Policy and Tennessee law; and (12) such other facts as described in this Complaint, to be determined during discovery, and to be shown at trial.

42. Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due to him under the terms of the Policy and Tennessee law. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing, or willfully disregarding the probability of causing, unjust and cruel hardship on Plaintiff, Defendant consciously ignored Plaintiff's valid claim and then withheld monies and

9

Case 3:23-cv-00087-CLC-DCP   Document 1   Filed 03/09/23   Page 9 of 13   PageID #: 9

benefits rightfully due Plaintiff.

43. Plaintiff seeks, and is entitled to, punitive damages.

**Count II – Declaratory Judgment**

44. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

45. Plaintiff requests that this Court enter a declaratory judgment declaring his rights with respect to the Policy and the Loss pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. Proc. 57.

46. There is an actual controversy between Plaintiff and Defendant concerning the amount owed to Plaintiff, who seeks a declaration as follows:

   a. A declaration that the Policy's limit of $5,000,000.00 for the dwelling is owed to Plaintiff because all requirements of Tennessee's valued policy statutes are satisfied in this case, as follows:
      i. The Policy had been in place since December 18, 2021;
      ii. The Policy had been in effect for more than 90 days at the time of the March 30, 2022 wildfire; and
      iii. As a result of the wildfire, the dwelling at the Insured Premises suffered a total loss.

47. Therefore, the Court should enter an Order declaring that the Policy's $5,000,000.00 limit for the total loss of the dwelling is due and owing to the Plaintiff pursuant to the Policy and under Tennessee law.

**Count III – Statutory Bad Faith - Tenn. Code Ann. § 56-7-105(a)**

48. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

10

48. As a result of Plaintiff's covered losses, the Policy issued to Plaintiff by Defendant is due and payable.

49. On January 3, 2023, Plaintiff's counsel made a formal demand for payment of the unpaid portions of Plaintiff's claim under the Policy to Defendant via a letter addressed to Defendant's Complex Property Claims Adjuster, John Woodworth. A copy of Plaintiff's demand is attached hereto as ***Exhibit 5***.

50. Plaintiff's letter set forth the amount of their claim, which Defendant has refused to pay, which totals $4,858,573.63. See ***Exhibit 5***.

51. Plaintiff's letter specifically notified Defendant that if Plaintiff's claim was not paid in full within sixty (60) days of Defendant's receipt of the demand, Plaintiff would bring a cause of action against Defendant for bad faith failure to pay Plaintiff's claims promptly, pursuant to Tenn. Code Ann. § 56-7-105(a). See ***Exhibit 5***.

52. On March 3, 2023, Defendant sent a letter to Plaintiff rejecting his demand for additional payments under the Policy. See a copy of Defendant's March 3, 2023 letter attached hereto as ***Exhibit 6***.

53. Defendant's continued refusal to pay Plaintiff all that he is entitled to under the Policy constitutes bad faith claims handling and a failure to promptly pay covered claims, which is a violation of Tenn. Code Ann. ¶ 56-7-105(a).

54. Pursuant to Tenn. Code Ann. ¶ 56-7-105(a), Plaintiff is entitled to recover up to twenty-five-percent (25%) of the losses incurred by Plaintiff, in addition to their contract damages.

55. As a result of Defendant's bad faith, Plaintiff has been damaged in an amount to be determined by a Sevier County Jury.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this

Honorable Court award a judgment against Defendant as follows:

    A.    For compensatory damages in an amount to be determined by a jury;

    B.    For punitive damages in an amount to be determined by a jury;

    C.    For a declaration that the Policy's limit of $5,000,000.00 on the dwelling is due and owing pursuant to the Policy and under Tennessee law;

    D.    For statutory bad faith damages, pursuant to Tenn. Code Ann. ¶ 56-7-105(a), for 25% of the losses incurred by Plaintiff;

    E.    For all costs incurred by Plaintiff as a result of this action;

    F.    For pre- and post-judgment interest; and

    G.    For such other further and general relief as this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a jury of his peers.

Respectfully submitted,

McWHERTER SCOTT & BOBBITT PLC

s/Jonathan L. Bobbitt
JONATHAN L. BOBBITT #23515
jonathan@msb.law
J. BRANDON McWHERTER #21600
brandon@msb.law
NANCY R. STEER #33562
nan@msb.law
341 Cool Springs Blvd., Suite 230
Franklin, Tennessee 37067
T: (615) 354-1144
F: (731) 664-1540

LERNER, ARNOLD & WINSTON, LLP

s/Frank P. Winston
FRANK P. WINSTON
286 Fifth Avenue, 12th Floor
New York, NY 10001
(212) 686-4655 office
(212) 532-3301 fax
fwinston@lawpartnersllp.com
*(Pro Hac Vice Motion to be filed)*

*Attorneys for Plaintiff*